# Walker's Appeal.

1. The statutes regulating the sale of a decedent's real estate, do not contemplate the *exhaustion* of the personal assets by the administrator, before he is at liberty to take any action for the sale of the real estate.

2. An administrator is not obliged, nor at liberty, to wait until he has exhausted the personalty, before he applies to the court for an order to sell the real estate, but is bound to apply as soon as it appears, satisfactorily to him, that the personal estate is insufficient to pay the demands against the estate.

3. At the time of petitioning the Orphans' Court for an order to sell real estate for the payment of debts, the administrator " must exhibit a true and perfect inventory and conscionable appraisement of all the personal estate whatsoever of the decedent."

4. An insufficient and imperfect schedule and appraisement, accompanying a petition of an administrator to the Orphans' Court, for an order to sell real estate for the payment of debts, is amendable.

APPEAL by Robert C. Walker, administrator of the estate of John Walker, Sr., deceased, from the decree of the Orphans' Court of *Allegheny county*.

On the first day of November, A. D. 1856, Robert C. Walker, duly appointed administrator of John Walker, Senior, made application by petition to the Orphans' Court of Allegheny county, for authority to sell the real estate of John Walker, Sr., for the payment of debts.

The petition, *inter alia*, sets forth, "That the said John Walker, Sr., late of Elizabeth, in said county, died intestate, seised of certain real estate; that the personal estate of said decedent is insufficient to pay his debts, and that it is requisite to sell the real estate for the payment thereof: that the petitioner has annexed a true and perfect inventory, and conscionable appraisement of the personal estate of said decedent, and a just, and true account upon oath of all the debts of the decedent, which have come to the knowledge of the petitioner, and that the real estate mentioned and described in petition, is a full and correct statement of all the real estate of the said decedent.

The administrator having filed a bond, with approved security, the court granted an order to authorize a sale by him, of the real estate described in his petition.

Pursuant to that order, having first given the requisite notice, the administrator did, on Monday, the 8th day of December, expose the said real estate to public sale, and sold the same to John Walker, Jr., he being the highest and best bidder.

On the 17th day of January, A. D. 1857, the special return of the administrator was read in open court, pursuant to the directions of the Act of Assembly, passed April 20, 1840, and the

same was confirmed *nisi*, to be confirmed absolutely in ten days, unless exceptions should be filed.

Exceptions were filed by Diana Frew, an heir of John Walker, Sr., and by George A. Bayard and other, creditors of said decedent. Exceptions were also filed by Robert Arthurs, Esq., attorney for James, Kent & Santee, lien creditors of Samuel Walker, one of the sons and heirs of John Walker, Sr., the said intestate.

These exceptions are in substance as follows : that the property was sold without sufficient notice, at an injudicious time, for a price which was grossly inadequate, and that the inventory of the personal property of John Walker, Sr., deceased, as filed by the administrator, does not include the whole of the personal estate of said decedent.

On the 17th day of February, 1857, the court, on motion, appointed J. P. Penney, Esq., auditor, " to distribute the proceeds of sale, and to report the facts and reasons for such appropriation, and generally to report upon the exceptions."

To which the auditor, *inter alia*, reported :

" The only questions, therefore, to be determined in considering these exceptions, are, 1st, whether the administrator gave the notice required by law ? and, 2d, whether the prices are so grossly inadequate that the sale should be set aside ?"

The evidence showed, that legal notice of the time and place of sale was given, and the " auditor is, therefore, of the opinion, that the act of assembly in reference to notice, was substantially complied with by the administrator," and overrules the exception.

An exception was also filed, that the inventory of the personal property did not contain a statement of a mortgage from Samuel Walker to John Walker, Sr., for $10,000, which remained unpaid, upon which the auditor reported as follows :

" Your auditor is of opinion, that the mere omission of a portion of the personal estate in the inventory and appraisement attached to an application for the sale of real estate, does not, of itself, vitiate the order, or require the sale to be set aside, unless it be shown that if the whole estate had been included, it would have exhibited to the court some reasonable ground for refusing the order."

On behalf of the administrator, it was claimed, that the mortgage was of but nominal value, the mortgagor being insolvent, and the lien of the mortgage divested by judicial sales, and offered evidence to sustain his allegations, from which the auditor found and reported as follows :

" Your auditor is, therefore, fully satisfied, that the lien of this mortgage has been so far divested, and rendered uncertain by judicial sales, as to make it of comparative small value, and that

the administrator cannot realize from it sufficient to render the sale of the real estate unnecessary, for the debts amount to over eleven thousand dollars, while the whole real estate was sold for thirty-nine hundred and sixty dollars, and even if a re-sale of the "tavern lot" should be made, that amount could not be increased more than a thousand dollars. Thus showing, that unless at least six thousand dollars can be collected from this mortgage, it would still be necessary to sell all the real estate. And there is no reasonable ground for believing that the mortgage would produce such a sum.

"If, therefore, the whole estate is required to pay the debts of the intestate, neither the heirs nor their creditors are materially interested in having the sale set aside. And, for the same reason, the creditors of the intestate cannot be interested in sustaining these last exceptions, for they are all lien creditors, sharing the proceeds of the real estate according to their priority, and standing in equal right as to the personalty ; and as they will be entitled to the whole of both funds, it cannot be material to them which is distributed first.

"Your auditor is, therefore, of the opinion, that the exceptions should be overruled, and the sales of all the lots confirmed, except the lot No. 13, at the corner of Market and Water streets, with the ferry, &c., the sale of which he recommends to be set aside, upon condition that some responsible person file a stipulation to advance the price sufficient to cover the costs of the re-sale, and interest on the former bid. He recommends this precaution before ordering a re-sale, because no person was produced by the exceptants who testified that he was willing to bid more than twelve hundred dollars upon a re-sale ; and the testimony shows that property has been depreciating in value in Elizabeth for some year or two past."

To which report exceptions were filed by Messrs. Robb & M'Connell, Thomas Mellon and Robert Arthurs, Esqrs., attorneys for creditors and parties at interest.

Upon the hearing of which, the court filed the following opinion and decree :

"The petition for an order of sale is defective in this. It does not set forth that the sale prayed for is for the payment of debts, and it fails to set forth that the personal estate of decedent is exhausted. And further, the administration account omits one large personal asset of $10,000, on a mortgage dated November 1, 1839, given by Samuel Walker to John Walker, and recorded in Allegheny county, which remains unsatisfied of record.

"The whole body of the acts of assembly, bearing upon this proceeding, and on all similar proceedings, contemplate the exhaustion of the personal assets before any action is taken for the sale

of real estate. The petition does not set forth that there are no personal assets, nor does it ask the court to sell to pay debts. The power of the court to decree a sale at all is contingent on the fact that there are not sufficient personal assets to pay the debts. Under this defective petition and administration account, the court is of opinion that the whole proceedings are irregular, and that the court had no power under the law, to make the order of sale : and to confirm this proceeding, may place everybody concerned in endless disputes and difficulties. A careful examination of the record confirms this opinion.

" The exceptions to the auditor's report are sustained, and the auditor's report is set aside.

" The petition, order of sale, &c., and sales made in pursuance of it, are set aside, at the costs of the petitioner, as having been irregular, and of none effect from the beginning. The record itself fails to exhibit a case where the court had the power to make such order, and no such contingency as the law contemplates is made manifest, conferring power and jurisdiction on the court to make any order of sale for the purpose of paying debts, or for any purpose."

From which the administrator, Robert C. Walker, appealed, and assigned the following error :

" The court erred in setting aside the report of the auditor, and imposing the costs on the administrator."

*George P. Hamilton,* and *J. S. Morrison,* for appellant :
Cited Purd. Dig. 290, § 93 ; 5 Barr, 413, 416 ; 1 Har. 190 ; 1 Troubat & Haley's Prac. 835 ; Brightly's Eq. 555, § 787 ; *Oakford's Estate,* 1 Whart. Dig. 1092, § 418 ; Purd. Dig. 665, §§ 48, 49, 50 ; 5 Barr, 107 ; 9 Id. 167 ; 5 W. 157 ; 7 Id. 65 ; 5 Har. 416.

*Thomas M'Connell* and *Robert Arthurs,* for creditors—appellees.

The opinion of the court was delivered by
WOODWARD, J.—We do not agree with the learned judge of the Orphans' Court, that the acts of assembly regulating the sale of decedent's real estate, contemplate the *exhaustion* of the personal assets by the administrator, before he is at liberty to take any action for the sale of the real estate. " Whenever it shall satisfactorily appear to the executor or administrator, that the present estate of the decedent is *insufficient* to pay all just debts," &c., is the language of the 20th section of the Act of 24th February, 1834 ; he is then to proceed without delay in the manner provided by law, to sell, under the direction of the Or-

phans' Court, so much of the real estate as shall be necessary to supply the deficiency. He is not obliged, nor at liberty, to wait until he has exhausted the personalty, but is bound to apply to the court, as soon as it appears, satisfactorily to him, that the personal estate is insufficient. It cannot, therefore, be said, that this administrator proceeded prematurely. He set forth in his petition, under oath, that the personal estate of the decedent was insufficient to pay his debts, and that it is requisite to sell his real estate for the payment thereof, and having also specified the real estate of the decedent, he concluded by praying the court to authorize a sale of it. This was a sufficient petition to ground the proceeding, and we think the court was in error in setting it aside. But the 33d section of the act referred to, required the administrator to exhibit to the court a "true and *perfect* inventory and conscionable appraisement of all the personal estate whatsoever of the decedent." He presented what he called such an inventory, but it appears that he omitted a recorded mortgage of Samuel Walker, in favor of the decedent, for a real debt of ten thousand dollars. Whether this was by accident or design is not material. An inventory which omitted so important an item of assets, could not be called either true or perfect; nor could the accompanying appraisement, however conscionable, be said to be of all the personal estate whatsoever of the decedent.

The object of requiring such an inventory and appraisement, is to enable the court to decide whether there is necessity for the sale of the whole or any part of the real estate. The administrator, in making his application, acts on evidence satisfactory to himself, but the sale, when it is ordered, is a judicial sale—in pursuance of a solemn decree of a court of record—and before such a decree is passed, the court is entitled to have all the evidence which the statute provides, for the information of its conscience. If the court were bound to decree the sale, because the administrator had satisfied himself that there would be a deficiency of assets, all effectual supervision of personal representatives would be taken away, and the safeguards which the law throws around the real estate of decedents, would be broken down. It would be idle to require the court to decree the foregone conclusion of the administrator, and better to commit the whole matter at once to the unrestrained discretion of the latter.

But it is said, by way of excusing the administrator's neglect to return this mortgage, that it is worthless—that the mortgagor is insolvent, and that the mortgaged premises were sold on a prior judgment of James T. Parke against Samuel Walker. The auditor who was appointed to make distribution of the proceeds of the Orphans' Court sale, says it is difficult to determine, from the loose and indefinite description of the levy, to what extent

, the mortgage was divested by the sheriff's sale, but he thinks almost the entire mortgaged premises, except the part known as the "four acre lot,".were sold by the sheriff. He tells us also, that this four acre lot, together with all the other lands described in the mortgage, were subsequently sold at sheriff's sale, but on a judgment younger than the mortgage, and at a time when all liens prior to the mortgage had been extinguished. This last sale would not affect the lien of the mortgage, for a sheriff's sale on a junior judgment, divests a mortgage lien only where the mortgage is not prior to all other liens, (except as provided in the Act of 6th April, 1830,) or where the junior judgment is for part of the mortgage debt; 10 Barr, 472; 1 Jones, 282. The mortgage, then, was a subsisting lien as to the four acre lot, and possibly as to more of the premises described in it, and this question, the extent and value of the subsisting lien, as well as the solvency of the mortgagor, ought to have been submitted to the court in the conscionable appraisement. It was not for the administrator to assume that an open mortgage for ten thousand dollars was valueless, and so suppress all statement of it. If the facts that had come to his knowledge led him to suppose that as a personal security it was worthless, and as a lien it had been divested, he should have submitted these facts to the court, and given them an opportunity to pass on them. By means of an auditor and a survey, if necessary, the court could have determined how much of the mortgage premises had been sold by the sheriff at the first sale—how much remained subject still to the mortgage—whether the lien was impaired by the second sheriff's sale—and, indeed, whether this mortgage, together with the other assets of the decedent, were sufficient to pay his debts without recourse to the land. The law has entrusted this question to the Orphans' Court for adjudication, and it is of the last importance to widows and heirs, that it should remain where the law has placed it. A very ingenious argument *a posteriori* may be made to prove that the court would have deemed the personalty insufficient, had it all been exhibited, but it never can be certain that a judicial decree, founded on partial evidence, is the same it would have been on full and appropriate proof. At any rate, there is the statute, which says, no authority for the sale or mortgage of real estate shall be granted, until such an exhibition of the personal estate is made as it prescribes, and it is not possible to answer that with ingenious arguments.

On the whole, we think the decree in setting aside the sale, founded on so imperfect an exhibition of the personalty, was right, although we consider the petition sufficient, and the schedule amendable in the particular specified, yet it may, perhaps, be best to clear the record, and make way for a more careful

[Messick et al. v. Ward.]

proceeding *de novo*, by affirming the decree generally, which is done, except as to the costs, which are ordered to be paid out of the estate.